1  ISMAIL J. RAMSEY (CABN 189820)
   United States Attorney
2
   MARTHA BOERSCH (CABN 126569)
3  Chief, Criminal Division

4  RYAN ARASH REZAEI (CABN 285133)
   Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102-3495
        Telephone: (415) 436-7200
7       FAX: (415) 436-7234
        ryan.rezaei@usdoj.gov
8
   Attorneys for United States of America

9
10                          UNITED STATES DISTRICT COURT
11                        NORTHERN DISTRICT OF CALIFORNIA
12                                  SAN JOSE DIVISION

13 | UNITED STATES OF AMERICA,      ) CASE NOS.
                                    ) 24-CR-418 PCP
14 |     Plaintiff,                 ) 24-CR-419 PCP
                                    )
15 | v.                             ) **OPPOSITION TO DEFENDANT'S MOTION TO**
                                    ) **REVOKE DETENTION ORDER**
16 | OMAR NAZIRY,                   )
                                    )
17 |     Defendant.                 )
                                    )
18

19 | I.    **INTRODUCTION**

20       Following his indictment on mail fraud and theft of government property charges, the defendant

21 was arrested at his parents' home in Florida. The Florida magistrate ordered the defendant detained

22 pending trial after the government established that he had stayed hidden in a furnace closet – behind a

23 grate – for more than two hours while law enforcement searched for him. And all the while, the

24 defendant's parents, who are both well-educated, repeatedly lied about the defendant's whereabouts.

25 These are pictures of where the defendant – a 40-year-old man with a master's degree – remained

26 hidden while law enforcement conducted its search:

27
28


The defendant made his initial appearance in this district and once again sought his release. But Judge van Keulen, like the Florida magistrate, ordered the defendant detained pending trial. That brought to two the number of magistrates who felt it appropriate to detain the defendant pending trial.

The defendant nevertheless seeks his release, claiming he hid from law enforcement not because he was trying to flee, but because he was supposedly afraid. But, for the reasons set forth below, that strains credulity. The defendant did not want to get caught and hatched a plan – that involved his parents, one a pharmacist and the other a professor of economics – to prevent his capture. It is silly to think this time will be any different. This Court should reject the defendant's motion to revoke the magistrates' detention orders.

## II. PROCEDURAL HISTORY

### A. The defendant's crimes

The defendant was charged in two separate indictments with mail fraud and theft of government property. As described in the mail fraud indictment, for five years the defendant falsely and repeatedly represented to his former employer he was in the military on deployment in order to obtain differential pay and other benefits. *See* 24-CR-419 PCP, Dkt. 1. In support of his fraudulent request for differential pay, the defendant sent his former employer false military orders and false military leave and earnings statements. Later, after learning his employer would no longer award him differential pay, the defendant attempted to extort his former employer by sending a letter purportedly authored by an army officer. *See id.*, ¶¶ 14-15. That letter threatened a PR disaster and also said the employer's contracts with the military could be affected if the employer did not overturn its decision. *Id*. Even after the former employer accused the defendant of committing fraud, the defendant sent another letter claiming he was in fact in the military and that his military orders were valid. *Id.*, ¶ 17.

As he fraudulently obtained differential pay from his former employer, the defendant also fraudulently obtained federal housing assistance. In order to obtain that housing assistance, the defendant falsely represented to the housing authority that his former employer was paying him only about $12,750 annually, when, in fact, he was making closer to $100,000 annually. Not only did the defendant lie about his income, he also created an email account designed to mimic his former employer's legitimate email account. And from that illegitimate, spoofed email account, the defendant made false representations about his employment and how much money he was being paid. This serves as the basis of the theft of government property indictment. *See* 24-CR-418 PCP, Dkt. 1.

### B. The detention hearing in Florida and the magistrate's detention order

Following the indictments, the defendant was arrested at his parents' house in Florida. There, a full-blown detention hearing was held. *See* Dkt. 24-CR-419 PCP, Dkt. 22-1 (transcript of defendant's Florida detention hearing). A law enforcement officer who participated in the arrest testified. He testified that law enforcement knocked on the front door of the residence and identified themselves as law enforcement four times. *Id.*, 8:25 – 9:9. The defendant's mother responded after about five minutes. *Id.*, 9:10-12. The defendant's mother indicated the defendant was not home. *Id.*, 9:13-18.

During law enforcement's search of the residence, the defendant's mother indicated the defendant moved back to California three days before. *Id.*, 10:9-24. Law enforcement continued to speak with the mother for approximately two hours. *Id.*

Law enforcement spoke with the defendant's father. The defendant's father was not at the house when law enforcement arrived; he was at the gym. *Id.*, 10:25 – 11:6. Law enforcement spoke with the father at the gym; he said his son moved back to California and had been gone for approximately a week. *Id.*, 9-11. The defendant's father returned to the home at law enforcement's request. *Id.*, 12:5-7.

Law enforcement continued to interview both the defendant's father and mother at the home. *Id.*, 12:8-9. Neither parent told law enforcement the defendant was in the house. *Id.*, 12:10-12.

Based on the evidence presented and the attorney proffers, the Florida magistrate judge ordered the defendant detained pending trial. *See id.*, 30:8 – 22. The magistrate's reasoning is discussed more fully below.

### III.    LEGAL STANDARD

#### A.    De Novo Standard of Review

A district court's review of a magistrate judge's order regarding pretrial detention is reviewed de novo. *United States v. Koenig*, 912 F.2d 1190, 1191-93 (9th Cir. 1990) ("[The district court] should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference."). The district court may hold evidentiary hearings but is not required to do so. *Id.* at 1193.

#### B.    Preponderance of Evidence Standard

"[The government] must prove by a preponderance of the evidence that a defendant poses a 'serious' flight risk and no combination of conditions would reasonably assure his appearance at future court proceedings as required." *United States v. Hoover*, No. CR-14-554-1-PHX-SRB, 2014 WL 2094201, *11 (D. Ariz. May 20, 2014) (citing 18 U.S.C. § 3142(f)(2)(A)).

#### C.    Statutory factors

The Ninth Circuit has identified several relevant statutory factors in determining whether pretrial detention is appropriate: 1) the nature and circumstances of the offense charged; 2) the weight of the evidence against the defendant; 3) the defendant's character, physical and mental condition, family ties,

employment, financial resources, length of residence in the community, community ties, past conduct, history relating drug or alcohol abuse, and criminal history; and 4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986). The United States concedes the fourth factor weighs in the defendant's favor, and so only discusses the first three factors below.

## IV. ARGUMENT

For the reasons discussed below, the government has established by a preponderance of the evidence that the defendant is a serious risk of flight and that no condition or combination of conditions will reasonably assure his appearance.

In addition to the below arguments, the United States recommends that the Court review the memorandum the government filed in connection with the detention proceedings before Judge van Keulen (24-CR-419 PCP, Dkt. 11) and the transcript from the Florida detention hearing (Dkt. 22-1). Moreover, Special Agent Marianna Graupmann, the lead agent of this investigation, will be available at the upcoming hearing to testify as needed.

### A.    Nature and circumstances of the charged offenses

The nature and circumstances of both charged offenses favor detention. As described more fully above, the defendant's mail fraud scheme involved all sorts of deception over five years. And it involved not just a pattern of deception, but extortion and threats. The defendant's theft of government property crime also involved deception: he lied about his income and created a false email account to impersonate his former employer. Nothing about this defendant should be trusted.

The Florida magistrate reached the same conclusion on this factor. The following is an excerpt from the magistrate's oral ruling:

> The first factor is the nature and circumstances of the offense charged here. . . . In particular, the first indictment – that's the mail fraud indictment -- is a speaking indictment, as one would say, and has allegations of the creation of false military orders, false documents, pretending to be different people, an Army officer in Hawaii, writing a letter, and all for the -- obtaining money and property. And all of this is nonexistent military service. So the offense conduct in here does involve a lot of fabrication, which I think is going to eventually go to the risk-of-flight issue here in this case.

*See* Dkt. 24-CR-419 PCP, Dkt. 22-1 (transcript of defendant's Florida detention hearing), 26:11 – 27:3.

In his motion, the defendant claims he has little incentive to flee because he faces a potentially non-custodial sentence. But here's the thing: when faced with the prospect of arrest, he *did* flee. There's no better indicator of what the defendant will do in the future than what he did just a couple of months ago.

### B. The weight of the evidence

The weight of the evidence is strong. As to the mail fraud count, the defendant sent false military orders and leave and earnings statements from his email address. In addition to sending these false items to his former employer, as summarized in the indictment, after his request for additional differential pay was denied, the defendant sent two more letters – one of which was extortionate – with the hope of receiving more pay. And the proceeds of his fraud scheme were deposited into an account in his name. The defendant also admitted to law enforcement – once in April 2022 to the Sunnyvale Department of Public Safety and then again during his arrest – that he was never in the military. As to the theft of government property case, the defendant lied about his income – which is easily established by the defendant's earnings statements – and also impersonated his former employer.

### C. The defendant's character, past conduct, and family ties

As the defendant points out, there are some facts that favor the defendant, including his college and master's degrees. But his conduct at the arrest outweighs all of those facts.

As mentioned, law enforcement knocked on the residence's front door and identified themselves four times. The defendant's mother opened the door and then lied about the defendant's whereabouts. The defendant's father similarly lied about his son's whereabouts, claiming his son had left for California about a week prior. Importantly, the defendant's father first told law enforcement his son had left for California when the father was confronted at the gym. This means one of two things: either the defendant and his family planned in advance what they would say if law enforcement ever came looking for him at his parents' house, or they hatched that plan in the five minutes between when law enforcement first knocked on the door and when the defendant's mother opened it. Again, only more deception.

The defendant claims in his motion that he did what he did – that is, hide for more than two hours – because he was scared. He made the same claim at his initial appearance in this district. But

GOVERNMENT OPPOSITION  
24-CR-418 PCP AND 24-CR-419 PCP

6

that strains credulity. This is a 40-year-old man with a master's degree who has been in this country for years and who worked as a business system analyst for a global security and aerospace company. And, as he admits in his own motion, he had a relatively pleasant experience with law enforcement in April 2022, when they first asked him about his fraud. But suddenly, in August 2024, he thinks the Taliban are at his door? This despite his age, experience, and college and master's degrees? This despite his pleasant experience with law enforcement in April 2022, when law enforcement was nothing but professional?

The Florida magistrate summed it up best in his oral ruling:

> But I think that the issue in this case -- and I think [the prosecutor] hit the nail on the head -- is what happened at the arrest. I mean, there's really no way to get around that, and I think that does go to 3142(g) factors. I think it goes to the factor of the person's character in this situation, which is the first 3142(g)(3)(A) factor . . . .
>
> And then we have this whole incident upon his arrest. You know, I appreciate, Mr. [Defense Counsel], you doing your best to proffer to me why he hid and taking responsibility for that and not hiding from it. I mean, those are – that's pretty much all you can do with those facts; so I understand your argument, but the fact is, when law enforcement arrived, even taking the defense's version of it, that at first he was scared, he then hid in there for two hours while law enforcement searched his house and searched for him and talked to both his parents.
>
> You know, if he would have gone in that space, and then once he realized it -- out of fear, and then once he realized that law enforcement was there, came out and turned himself in, we'd probably be having a different conversation right now. But that's not what he did. He just hid there until they found him.
>
> And, you know, his parents – it's problematic to me. I mean, they're both well-educated, as far as I know, upstanding citizens. He's very well-educated. They''e professionals. They knew the situation here. They know that they should have been truthful to law enforcement. I mean, it's not that they -- and whether or not he could fix that door and hide himself, you know, his parents said that he had not been there for a week or several days, depending on which parent it was, and so that was clearly a lie. And so you have his parents lying and covering for him and not breaking to law enforcement, which I think is a good point, and then he has siblings in Canada.

*See* Dkt. 24-CR-419 PCP, Dkt. 22-1 (transcript of defendant's Florida detention hearing), 27:21 – 29:11. The defendant may have been afraid at first (which, for the reasons mentioned above, strains credulity). But the fact that he remained hidden for two hours – which was more than enough time to collect one's thoughts and overcome any rash decisions – indicates exactly what he was trying to do: thwart his arrest

and escape criminal prosecution.

The United States understands that Pretrial Services has recommended release to the halfway house at 111 Taylor Street, in San Francisco. But release to the halfway house is inappropriate. First, as the government understands, Pretrial Services did not have the benefit of the transcript from the detention hearing in Florida. Moreover, it is common for defendants to escape from 111 Taylor Street, as judges in this district have noted. The halfway house is not going to prevent someone from escaping – indeed, it is counsel's understanding that defendants are physically free to come and go and staff cannot physically stop anyone from leaving – when that person is intent on doing so. And, here, the defendant has already shown he is intent on escaping prosecution.

## V.   CONCLUSION

In some cases, it can be difficult to predict what a defendant might do if released from custody. But that is not the case here given what the defendant did during his very recent arrest. He was intent on escaping criminal prosecution. And if given the chance, he will try to escape again. The government has established by a preponderance of the evidence that the defendant is a serious risk of flight and that no condition or combination of conditions will assure his appearance moving forward. The government asks this Court to deny the defendant's motion and order the defendant detained pending trial, just as Judge van Keulen and the Florida magistrate ordered.

DATED: October 21, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

　　　　/S/
RYAN ARASH REZAEI
Assistant United States Attorney